# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                                      No. 19-CR-2514 WJ
                                                                                                                                    No. 20-CR-1091 VJ

ALFREDO HUMBERTO CONTRERAS-GOMEZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR RELEASE PENDING SENTENCING DUE TO COVID-19

THIS MATTER IS BEFORE THE COURT on Defendant's Motions for Release Pending Sentencing Due to COVID-19, pursuant to 18 U.S.C. § 3143.  (**Doc. 51** in 19-CR-2514; **Doc. 21** in 20-CR-1091).  Both the United States Attorney and United States Probation oppose Defendant's request.  The Court, having reviewed the Parties' briefing[1] and considered the applicable law, concludes that a hearing is not necessary to resolve the issues presented.  *See United States v. Greene*, 158 F. App'x 941, 942 (10th Cir. 2005) (explaining that the court is not required to hold a hearing for motions made under § 3143(a)).  The Court finds that Defendant's Motion is not well taken and is, therefore, **DENIED**.

## BACKGROUND

Defendant is currently detained at the Otero County Prison Facility ("Otero County") pending sentencing.  In his first case, Case No. 1:19-CR-2514, Defendant pleaded guilty to reentry of a removed alien and was sentenced to six months imprisonment followed by one year of

---

[1] The briefing on this matter consists of Defendant's Motion and the Government's Response.  Defendant did not file a Reply within the time period allowed under our rules.  *See* D.N.M.LR-Crim. 47.8 ("A reply must be served within fourteen (14) days after service of the response.").

supervised release. (Doc. 34.) Upon completion of his imprisonment, he was deported. (Doc. 37.) While serving an unsupervised term of supervised released, Defendant illegally reentered the United States and charged again with reentry of a removed alien when he was arrested by United States Border Patrol— a mere 33 days after being deported. A new criminal case was generated, 20-CR-1091, and United States Probation simultaneously moved for revocation of supervised release in 19-CR-2514. Defendant pleaded guilty to reentry of a removed alien on April 7, 2020. Defendant then filed his identical Motions on the dockets of both cases. The United States likewise filed its identical Responses. For the sake of consistency, the Court's references to CM/ECF documents throughout this Opinion correspond to the document numbers in Case No. 20-CR-1091, the new felony reentry case.

## LAW

As an initial matter, because Defendant is detained pending sentencing, 18 U.S.C. § 3143(a)(1) is the controlling statute. Although Defendant neglects to provide a statutory basis, the United States correctly notes that in order to give effect to Defendant's Motion, the Court must construe Defendant's motion as a review of the magistrate judge's order of detention pursuant to 18 U.S.C. § 3145. The district court's review of a magistrate judge's detention order is de novo. *See United States v. Cisneros*, 328 F.3d 610, 616, n.1 (10th Cir. 2003).

Once a defendant has been convicted, "[t]here is a presumption of detention pending sentencing." *United States v. Johnson*, 652 F. App'x 619, 621 (10th Cir. 2016). Section 3143(a)(1) requires that a defendant be detained "unless the judicial officer finds by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community if released" on personal recognizance, unsecured bond, or conditions of release. The presumption applies even if the low end of the guideline sentence is zero months, meaning that the

defendant could theoretically be sentenced to no time in custody. *See Johnson*, 652 F. App'x at 621. "To secure release after a guilty verdict," the burden is on the defendant to rebut the presumption of detention with clear and convincing evidence. *Id.*

## DISCUSSION

Defendant argues that he is held pending sentencing for the "non-violent offense of reentry after deportation." (Doc. 21, ¶ 15.) He argues that he poses no threat to safety of any person or the community because he "has never been convicted of a crime of violence." He further argues that, due to the immigration detainer, he will not actually be released from custody and thus will have no opportunity to pose a risk to the safety of the community "with which Congress was concerned when it wrote § 3143." (*Id.*, ¶ 18.) The United States points to Defendant's lengthy arrest history, noting that while Defendant has never been *convicted* of a violent crime, the facts underlying his convictions and prior arrests reveal a propensity for violence. The United States also cites the fact that Defendant committed his fourth known illegal entry into the United States only 33 days after he was last deported and while on supervised release for his third known illegal entry.

The Court agrees with the United States. While true that Defendant has no violent convictions, his Presentence Report ("PSR") reveals that Defendant's guilty plea to the charge of disorderly conduct was a plea to a lesser offense.[2] (Doc. 19 at 5.) The underlying episode was a violent confrontation between Defendant and his ex-girlfriend. (*Id.*) Defendant's arrest history further shows a pattern of violent episodes including an arrest for attempted kidnapping and

---

[2] While the Court bases it flight risk/danger to the community analysis largely on Defendant's PSR, the Court recognizes that because Defendant has not yet been sentenced in his 2020 reentry case, 2:20-CR-1091, he still has the opportunity to object to the factual recitations in that PSR. The Court is considering the PSR much the same as it would a pretrial services report in its analysis under § 3143. That said, the Court notes that Defendant did not object to the factual recitations in the PSR for case number 1:19-CR-2514 (Doc. 19). Those recitations are substantially the same as those in the instant PSR.

multiple arrests for assault. (*Id.* at 7–8.) Moreover, alcohol was involved in the disorderly conduct offense and alcohol was also involved in the disturbing paragraphs of the PSR detailing Defendant's arrest history. In reading the criminal convictions and arrest history of the PSR, the Court is left with the definite impression that Defendant has a problem with controlling his consumption of alcohol which can definitely impact public safety. Thus, the Court finds and concludes that Defendant poses a danger to the community if released.

The Court is unpersuaded by Defendant's argument that because he will not be released from custody within the United States, he will not be a danger to the community. While the Court understands Defendant's desire to return to the United States given that his common law wife or girlfriend and his children reside in Santa Fe (Doc. 21 at 6), considering that the PSR refers to Defendant's common law wife or girlfriend as his "ex-girlfriend" (Doc. 19 at 5) and considering that the "ex-girlfriend" may be considered a victim of domestic assault and/or battery (Doc. 19 at 5, 8), she may not want to have future contact with the Defendant. Additionally, Defendant has shown that he has no regard for this country's immigration laws and that he is particularly adept at illegally crossing the border. Indeed, Defendant admits that he crossed the border to "rejoin his wife and their three children, who live in Santa Fe, NM," (Doc. 21 at 6), which leads the Court to surmise that he is very likely to return to the United States. Based on the foregoing, the Court finds that not only does Defendant likely to pose a danger to the community if released, but also that his release *would* put the community Congress intended to protect at risk. Therefore, the Court finds that Defendant has not met his burden of proving by clear and convincing evidence that he is not likely to pose a danger and, as such, has not overcome the presumption of detention under § 3143(a)(1).

Moreover, the Court also finds that Defendant has not met his burden to show that he is not a flight risk. Defendant argues that he would have no opportunity to flee because he is subject to an immigration detainer and would be immediately remanded to immigration custody. (Doc. 21, ¶ 17.) Defendant explains that "[h]e is subject to an immigration detainer based on a prior order of removal, and would be transferred directly to immigration custody and removed with no opportunity for further hearing." *Id.*

Defendant's argument begs the question as to why he filed this motion, considering it seems he is requesting to be released only so that he can be detained at a United States Immigration and Customs Enforcement facility. Regardless, the proper analysis concerning whether Defendant is a flight risk is whether he is a person who is likely to flee if released, and Defendant's criminal history unquestionably demonstrates to the Court that he is a person that is likely to flee. Case No. 2:20-CR-1091 marks Defendant's third conviction for reentry of a removed alien. (*See* Doc. 19, ¶¶ 23, 24). Additionally, as previously mentioned, the offense in Case No. 2:20-CR-1091 was committed while the Defendant was on an unsupervised term of supervised release for the illegal reentry conviction in Case No. 1:19-CR-2514. Defendant has not been deterred by the time served on his previous illegal reentry conviction. His prior criminal history clearly demonstrates that he has no respect for the immigration laws of the United States and if released, he will likely flee in order to remain in the United States, particularly given that his children and girlfriend or ex-girlfriend reside in Santa Fe. Consequently, the Court has little confidence that Defendant will appear for sentencing if released. Therefore, the Court finds that Defendant is a flight risk and thus has not overcome the presumption of detention.

Defendant devotes a considerable portion of his motion discussing the coronavirus at Otero County. (Doc. 51, ¶¶ 1–14.) He details the number of coronavirus cases at the facility, the

measures the facility has taken in response to the coronavirus, and what other Courts have done in response to the coronavirus. Defendant presented no evidence, however, with regard to his specific and particularized risk of contracting the virus.

This Court is well informed regarding the ever-evolving coronavirus situation. As noted above, 18 U.S.C. § 3143(a)(1) is the controlling statute, and it requires the Court to evaluate whether Defendant is "likely to flee or pose a danger to the safety of any other person or the community if released." Defendant points to nothing in § 3143(a)(1) that would allow for his release based solely on coronavirus. In fact, despite Defendant's acknowledgment that § 3143(a)(1) controls, he makes no argument with respect to how the coronavirus pandemic has any bearing on his requested relief. Put another way, Defendant does not make any argument that the ongoing pandemic makes him less of a flight risk or less of a danger to the community if released.

## CONCLUSION

There is a presumption of detention pending sentencing. For all the foregoing reasons, the Court finds that Defendant has failed to rebut that presumption with clear and convincing evidence showing that he is not likely to pose a danger to the community if released and not likely to flee. Accordingly, Defendant's Motions for Release Pending Sentencing (**Doc. 51** in 19-CR-2514; **Doc. 21** in 20-CR-1091) are **DENIED**. Defendant shall remain detained pending his sentencing hearing.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE